IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BO KOMBOL, individually and on behalf other persons similarly situated,<br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY,<br>　　　　　　　　　Defendant. | Case No. 1:20-cv-00070-SPW<br><br>**ORDER RE CLASS CERTIFICATION** |

Before the Court is Plaintiff Bo Kombol's Motion for Rule 23(b)(3) Class Certification (Doc. 50), filed September 7, 2021. Defendant Allstate Vehicle and Property Insurance Co. ("Allstate") filed a response in opposition to the Motion on October 22, 2021. (Doc. 52). Plaintiff filed their reply on November 19, 2021. (Doc. 53). The Motion is deemed ripe and ready for adjudication. For the following reasons, the Court denies Plaintiff's Motion.

I.   **RELEVANT BACKGROUND**

The proposed class action regards Allstate's alleged failure to incorporate and adhere to an objective standard for determining when an insured's covered structural repair requires the services of a general contractor and the subsequent inclusion of

1

sums for general contractor overhead and profit ("GCOP") in the insured's claim reimbursement.

In order to recover for loss or damage to insured property, an individual must file a claim with their insurance provider. That insurance provider will then typically assign a claims adjuster to inspect the scope of the property damage and determine both the value of that property and what services will be required for repairs. The adjuster creates an estimate based on their inspection and expertise to review with the insured. That estimate typically describes the damage to the structure, the present value of the structure, and what costs will be required to repair or replace the structure to its pre-loss condition. Once the scope of the loss is agreed upon by the insured and the insurer, the insurer issues a payment to the insured for the actual cash value ("ACV") of the structure. The ACV represents the agreed upon cost to repair the structure minus depreciation and the policy deductible. Insureds have the option to pocket that ACV payment or, should the insured wish to proceed with repairs, the insurer will pay the previously withheld depreciation—termed the replacement cost value ("RCV")—upon submission of proof the repairs were completed.

For particularly extensive or complex repairs, insured will often need to hire a general contractor to coordinate the services of multiple trades and assist in the repairs. For most insurers, when the insurance adjuster determines that it is

reasonably likely the repair will require a general contractor, the adjuster includes an industry standard 20% for GCOP in the repair estimate. Whether it is reasonably likely a repair will require a general contractor is intended to be an objective standard for adjusters to follow when determining the amount of loss. Plaintiff alleges Allstate fails to follow an objective standard in determining the need for GCOP and instead allows adjusters to determine GCOP on an individualized, subjective basis of when "warranted." (Doc. 51 at 6). Plaintiff claims this leads to disparate results depending on what adjuster is handling the claim and is inconsistent with the information provided to insureds. Further, "[i]t is . . . inconsistent with a wide body of case law where courts almost unanimously conclude that, where the insured would be reasonably likely to need a general contractor in repairing or replacing damaged property, GCOP has to be paid on an ACV payment . . . ." (*Id.* at 7).

To that end, Plaintiff seeks to certify the following classes:

Class I – The GCOP Class: All Allstate policyholders in Montana:

(a) Who suffered a structural loss under an Allstate homeowner policy;
(b) From April 27, 2012 to present (because the Montana breach-of-contract statute of limitations is 8 years);
(c) Where Allstate accepted liability;
(d) But where the ACV payment did not include GCOP, unless the insured was paid that full amount of GCOP as part of the RCV payment.

Class II – The UTPA Class: All members of Class I from April 27, 2018 to the date the class is certified (owing to the two-year statute of limitations on UTPA actions).

(Doc. 51 at 8).

## II. LEGAL STANDARD

A plaintiff seeking class certification has the burden of demonstrating that the proposed classes satisfy the requirements of Fed. R. Civ. P. 23(a) and (b). For Rule 23(a), the plaintiff must establish "'there are questions of law or fact common to the class,' as well as demonstrate numerosity, typicality and adequacy of representation." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 2022 WL 1053459, at *4 (9th Cir. 2022) (quoting Rule 23(a)). For Rule 23(b)(3)[1], "the district court must find that 'questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* at *5 (quoting Rule 23(b)(3)). The moving party must satisfy each requirement by a preponderance of the evidence. *Id.*

However, prior to addressing the Rule 23 analysis, the moving party must overcome the hurdle of defining the proposed classes with enough specificity to provide the best notice practicable. "[C]ourts generally accept that the definition must be 'precise, objective, and presently ascertainable' before the class action can

---

[1] Parties seeking class certification must satisfy one of three categories under Rule 23(b). Plaintiffs assert the putative classes qualify under the third category.

proceed." *Daniel F. v. Blue Shield of California*, 305 F.R.D. 115, 121 (N.D. Cal. Aug. 11, 2014) (citation omitted).

## III. DISCUSSION

### A. Ascertainability

As noted above, the moving party must define a class in such a manner "as to render it 'administratively feasible to determine if a given individual is a member of the class.'" *Senne v. Kansas City Royals Baseball Corp.*, 315 F.R.D. 523, 563 (N.D. Cal. July 21, 2016) (citation omitted). Courts have used several criteria for determining ascertainability, including whether class members can be determined based on objective criteria, whether the proposed class includes any members who will be able to recover, and whether the plaintiff can demonstrate that they will be able to locate any absent class members. *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 237 (N.D. Cal. Sept. 18, 2014).

Here, Allstate asserts that Plaintiff's proposed class definitions are overbroad and unascertainable because the class definitions would necessarily include individuals who did not suffer an injury and could not recover. The definitions for the proposed classes include "All Allstate policyholders in Montana . . . who suffered a structural loss" unless that policyholder later received the full amount of GCOP at the RCV payment stage. (Doc. 51 at 8). Allstate argues this definition sweeps in every Allstate policyholder regardless of whether that policyholder could have been

5


entitled to GCOP on their repairs. Thus, without that possibility of entitlement, certain members of the proposed classes would be included in a class action without a demonstrated, concrete injury. Allstate argues such a class is fatally overbroad and cites to the recent Supreme Court case *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), for support.

In response, Plaintiff states that the proposed class definitions are narrow and ascertainable because as "Allstate concedes it is obligated to apply an objective standard when determining whether GCOP is owed, but cannot actually identify any objective standard, its defenses are a mirage." (Doc. 53 at 3-4). Regarding Allstate's argument that potential class members would include individuals who did not suffer an injury, Plaintiff argues:

> Allstate's acknowledged failure to establish the objective standard about when GCOP must be paid means that there is no standard at all and a jury could determine—on a class-wide basis—that Allstate's failure to develop an objective standard means it cannot avoid paying GCOP to each and every insured that suffers a covered structural loss.

(*Id.* at 4).

The Court finds Allstate's argument persuasive, and agrees that Plaintiff's proposed class definitions, by necessarily including policyholders with no concrete injury, are overbroad and unascertainable. In *TransUnion*, the Supreme Court reviewed its own Article III standing precedent to determine whether several

thousand members of a putative class had standing to sue for an alleged violation of the Fair Credit Reporting Act. 141 S. Ct. at 2207. Within that review, the Supreme Court reiterated it was a plaintiff's burden to demonstrate standing. *Id.* Specifically, the Supreme Court held that "[e]very class member must have Article III standing in order to recover individual damages. 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" *Id.* at 2208 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 446 (2016) (Roberts, C.J., concurring)). The Supreme Court went on to determine that 6,332 of the 8,185 proposed class members did not have standing to sue because they had not suffered a concrete injury as required by Article III. *Id.* at 2209. The Supreme Court reversed the determination of the Ninth Circuit regarding those 6,332 potential class members and remanded for further proceedings regarding the 1,853 members who could demonstrate a concrete harm. *Id.* at 2214.

Plaintiff expressly stated his goal with filing for a class action as "taking away the subjective process that Allstate employs to decide whether GCOP is warranted, and instead, having Allstate follow established industry precedent by paying GCOP when it is properly owed." (Doc. 51 at 7). That qualifying language of "when it is properly owed" implies that there are times when GCOP is not properly owed on a policyholder's claim. For those policyholders, seeking to hold Allstate to an objective standard for paying GCOP would change nothing for how their claim was

7

handled. Those policyholders suffered no injury capable of judicial redress through their involvement in this class allegation. By including all Allstate policyholders in his proposed class, Plaintiff defined the classes too broadly and has provided the Court with no means to tailor the classes by determining which policyholders can properly demonstrate Article III standing and which cannot. Plaintiff's proposed class definitions are neither precise nor ascertainable.

While there is some question of whether ascertainability as a requirement is found in Rule 23, *See Ruiz Torres v. Mercer Canyons, Inc.*, 305 F.R.D. 646, 651 (E.D. Wash. April 8, 2015) and *Kosta v. Del Monte Foods, Inc*, 308 F.R.D. 217, 223 (N.D. Cal. July 30, 2015), many courts have found it to be a prerequisite to class certification. *See Carrera v. Bayer Corp.*, 727 F.3d 300 (3rd Cir. 2013); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097 (N.D. Cal. 2014). Given the recent Supreme Court holding in *TransUnion* and the current position of this litigation, the Court finds the rationale of those courts considering ascertainability as a prerequisite to class certification to be the better practice.

Further, because the proposed class definitions are overbroad and will necessarily include members without standing, the proposed classes will also face difficulties overcoming the requirements of Rule 23(b).

**B. Rule 23(b)**

A court may certify a class under Rule 23(b)(3) only if it determines that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### i. *Predominance*

"In order for the [moving party] to carry their burden of proving that a common question predominates, they must show that the common question relates to a central issue in the [party's] claim." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 2022 WL 1053459, at *6 (9th Cir. 2022). Determining whether the questions of law or fact common to the entire class predominate over individual questions must begin with the elements of the underlying cause of action. *Id.* "[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (citation omitted).

Here, Plaintiff asserts two claims for class-wide resolution: (1) "By failing to include general contractor overhead and profit with actual cash value payments, the Defendants violated the covenant of good faith and fair dealing and breached the insurance contract . . .;" and (2) "By systematically refusing to pay its insureds the

9

reasonable value of general contractor overhead and profit, the Defendants have violated the UTPA under § 33-18-201(1), (4), (5), (6), and (13)." (Doc. 19 at 9). The common question is then, as framed by the Plaintiff, "whether Allstate's stated policy—that it only pays GCOP when an adjuster subjectively decides that the extent and complexity of damages warrants the coordination of either trades persons, or non-related trades, in the completion of those repairs—breaches the insurance contract and violates the UTPA." (Doc. 51 at 25-26). This question does not satisfy Rule 23(b)(3) because the common question does not predominate over individual inquiries.

An essential element to each claim is the allegation that Allstate failed to pay GCOP when it was required to do so under the insurance contract. As asserted by Plaintiff throughout his brief, an insured is entitled to GCOP when it is reasonably likely that the services of a general contractor will be needed to complete the repairs. (Doc. 51 at 16 ("Virtually every court to have considered the issue has held that an insured is entitled to GCOP when the use of a general contractor would be reasonably likely, even if no contractor is used or no repairs are made."); 20 ("is Allstate required to pay its insured GCOP at the ACV stage on covered property where a general contractor is reasonably likely to be used?")). Allstate argues that this "reasonably likely" standard precludes class certification because that determination would require an investigation into the facts and circumstances of

10

every insured. Indeed, Allstate points out that courts who have addressed this issue at the class certification stage have uniformly declined certification due to the individual nature of the factual question. *See, e.g., Nguyen v. St. Paul Travelers Ins. Co.*, 2008 WL 4534395, at *9 (E.D. La. Oct. 6, 2008); *Allen-Wright v. Allstate Ins. Co.*, 2008 WL 5336701, at *7 (E.D. Pa. Dec. 17, 2008); *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 677 (M.D. Fla. Sept. 29, 2010).

Plaintiff attempts to distinguish the present case from those decisions stating, "[w]hile it is true that every court that has considered the issue has reached that conclusion, Kombol is unaware of any court allowing an insurer to avoid liability where the insurer concedes that it should have an objective standard for applying the 'reasonably likely' standard but flat-out admits that it does not." (Doc. 53 at 5). To be frank, this argument is more confusing than persuasive. Plaintiff's assertion does not clarify, for example, how resolution of that question would somehow negate the need to then conduct separate, factual investigations on every class member's claim to determine whether that claim reasonably warranted, and was therefore entitled to, GCOP. The fact remains that Plaintiff's desired classes would necessarily include individuals who do not share common questions of law or fact because their claim did not involve the use of a general contractor or warrant the use of a general contractor in the first place. Without conducting an individual analysis on every claim there would be no way of determining which individual was owed GCOP and

which was not. Plaintiff's assertion misses the underlying point of cases like *Mills* and *Nguyen* that the "reasonably necessary" standard necessarily entails a predominance problem because it requires that separate adjudication of each individual claim. As such, the Court finds the instant case lacks the required predominance for class certification under Rule 23(b)(3).

### ii. Superiority

To determine superiority, a court must consider the four factors expressed in Rule 23(b)(3): (1) "the class members' interests in individually controlling the prosecution or defense of separate actions;" (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members;" (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular form;" and (4) "the likely difficulties in managing a class action." Of these factors, Allstate focuses their argument against certification solely on the likely difficulties of managing the class. The Court also finds that the fourth factor presents the greatest obstacle to Plaintiff and will focus its analysis on those likely difficulties.

"[W]hen the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Zinser*, 253 F.3d at 1192 (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996)). In other words, "[i]f each

class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Id.* (citation omitted).

Here, as pointed out by Allstate, determining whether each insured is entitled to recover individually would require an analysis of the facts and circumstances of every insured's claim including "value of the loss, complexity of repair work, type of trade(s) and non-trade(s) work needed, and the number of trades, trades people, and non-related trades involved." (Doc. 52 at 33-34). Should this analysis result in an entitlement to GCOP, the insured and Allstate would then have to agree on the scope of the loss to determine the amount of GCOP owed—an exercise subject to mandatory appraisal under the terms of the insurance contract. Given these complexities, the Court cannot agree that a class action is superior to individual adjudication.

## IV. CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's Motion for Class Certification (Doc. 50) is DENIED.

The Clerk of Court is directed to notify parties of this order.

DATED this 2nd day of May, 2022.

/s/ Susan P. Watters
SUSAN P. WATTERS
U.S. DISTRICT COURT JUDGE